UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERI LYNNE PREHEIM,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security<br><br>   Defendant. | 1:13-cv-2103 GSA<br><br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Teri Lynne Preheim ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. The matter is pending before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 6 & 8.

## SUMMARY OF THE ADMINISTRATIVE PROCEEDINGS

Plaintiff filed a Title II application for disability insurance benefits alleging disability beginning on April 29, 2010.  AR 20; 156.  Her claim was denied initially and upon reconsideration.  AR 102-105; 107-111.  Subsequently, on June 18, 2012, an administrative law judge ("ALJ") conducted a hearing on Plaintiff's claim.  AR 36-71.  Plaintiff was represented by an attorney and testified at the hearing; a vocational expert also appeared and testified.  AR 36-71.  On July 20, 2012, the ALJ found that Plaintiff was not disabled.  AR 20-31.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-2.  Plaintiff then commenced this action in District Court.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.  The ALJ's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

///

///

///

**ISSUES PRESENTED FOR REVIEW**

Plaintiff argues that the Court should reverse the Commissioner's determination and order the payment of benefits, or, alternatively, remand for further proceedings, because (1) the ALJ did not provide legally sufficient reasons for rejecting the opinions of Plaintiff's treating psychiatrists, Drs. Griffith and Ziyar; (2) the Commissioner's decision is not supported by substantial evidence in light of the opinion of Plaintiff's treating doctor, Dr. Bradley Strong, that was submitted to the Appeals Council after issuance of the ALJ's decision; and (3) the ALJ did not give legally sufficient reasons for discounting Plaintiff's credibility with regard to her testimony at the administrative hearing. Doc. 13. The Commissioner responds that the ALJ properly evaluated the medical evidence and Plaintiff's credibility, and his decision is supported by substantial evidence. Doc. 14.

**DISCUSSION**

**A. The ALJ's Credibility Determination**

    (i)    <u>Summary of Plaintiff's Testimony</u>

On June 18, 2012, Plaintiff testified at a hearing before an ALJ and was represented by counsel. AR 36-71. Plaintiff has a high school diploma as well as vocational training as a medical assistant. AR 42. Plaintiff has a driver's license and is able to drive to the grocery store and other short distances. AR 42; 50; 63. She has not been restricted from driving by her treating doctor. AR 50. Plaintiff stopped working at her last job in medical billing because she was fired for taking too much time off when she got sick. AR 43. When asked what prevented her from working at the present time, Plaintiff responded as follows:

> Right now I just -- I don't feel comfortable driving. I have vertigo; and I have a real big issue with that. Even riding in the car makes me dizzy. I have issues being around other people that I don't know without somebody that I do know. I have body pain. I get chronic headaches. I'm on a load of medication to try to make me feel better. I have panic and anxiety attacks. I cry all the time. I'm just nervous always.

AR 48. Plaintiff testified that her vertigo medication made her queasy and nauseous before it calmed her down. AR 51. Plaintiff testified that medication helped control her depression when she is "severely depressed" but she still had her "ups and downs." AR 51. Plaintiff testified that medication also helped control her anxiety and panic attacks "for a little while; not as long as what they're supposed to." AR 51. Plaintiff had not been hospitalized for mental issues at any time. AR 53.

Plaintiff testified that she was in physical pain "[p]retty much all the time." AR 53. She stated she had pain "down my legs. I have it in my arms. I have it in my neck, and all through my back, and in my hips." AR 53. Plaintiff testified she could stand for 10 minutes before needing to sit down. AR 55. Plaintiff testified she could sit for "15, 20 minutes" before needing to get up. AR 55. Plaintiff had trouble lifting things, and had problems with her hands. AR 55; 56; 60. Plaintiff had trouble bending. AR 57. Plaintiff had "problems remembering things," was indecisive, and avoided crowds. AR 57-58. Plaintiff testified that she hears voices. AR 59. Plaintiff could follow simple instructions. AR 57.

Describing her average day, Plaintiff stated as follows:

> I'm constantly either switching positions, laying down, trying to rest, [or] in the shower trying to cool off. I just kind of roam around my house, sit on the couch, lay on the bed; nothing really – I feel like I don't ever really accomplish anything.

AR 60. Plaintiff does not do much house cleaning and pays the bills with her husband. AR 62. Plaintiff can go on her own to the grocery store to pick up a few items at a time. AR 63. Plaintiff does not socialize much. AR 63.

   (ii) <u>Applicable Law</u>

In evaluating the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented

objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id*.

> Regarding credibility determinations by an ALJ, the Ninth Circuit has held as follows:
>
> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, available at 1996 WL 374186. Finally, an ALJ's credibility finding must be properly supported by the record and sufficiently specific to assure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

    (iii)    <u>Analysis</u>

The ALJ did not fully credit Plaintiff's testimony regarding her subjective symptoms. The ALJ was required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. The ALJ gave the following reasons for discounting Plaintiff's subjective symptom testimony: (1) the objective medical evidence is inconsistent with the totally

disabling symptoms described by Plaintiff; (2) "[m]uch of the claimant's most extensive medical treatment occurred during a time when she was able to work;" (3) "[t]here is also no evidence that the claimant reported experiencing negative medication side effects as she testified; and (4) "Furthermore, the claimant's activities are somewhat inconsistent with her allegations[,] [f]or example, although the claimant alleges vertigo, she admits that she is able to drive a car." AR 29.

The Court finds that the ALJ provided specific, clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's subjective symptom testimony. First, the ALJ found that the objective medical evidence was inconsistent with a disabling impairment and noted that much of Plaintiff's most extensive medical treatment occurred when she was still able to work. AR 29. The ALJ discussed Plaintiff's history of anemia, ulcers and hypothyroidism. AR 27. The ALJ noted that Plaintiff needed conservative treatment for these conditions after her disability onset date of April 29, 2010. The ALJ observed that Plaintiff's anemia had "responded favorably to daily intake of iron supplements." AR 27. The ALJ also noted that Plaintiff's ulcers were being managed with medication, and that her hypothyroidism was controlled with Synthroid. AR 27. Similarly, the ALJ observed that Plaintiff did not require surgery or physical therapy for her osteoarthritis and lumbar radiculopathy. AR 27. The ALJ also noted that Plaintiff's carpal tunnel syndrome, headaches, and vertigo have been treated conservatively by her physicians and most of her medical visits related to headaches and dizziness occurred at a time when she was still working.[3] AR 24. The ALJ also addressed the medical evidence related to Plaintiff's mental impairment, as discussed in more detail in the following section of this order. Specifically the ALJ noted that Plaintiff's mental symptoms improved with treatment and that her global assessment of functioning ("GAF") scores indicated

---

[3] Plaintiff has stipulated that the ALJ fairly characterized the medical evidence in the record except regarding Plaintiff's mental impairment. Doc. 13 at 5.

that her symptoms were relatively moderate.[4]  AR 28.

Although an ALJ may not rely solely on the inconsistency between objective medical evidence and a claimant's subjective claims in order to reject the latter, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), an ALJ may properly consider such an inconsistency as one factor among others in making his credibility determination.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here the ALJ gave multiple reasons for discounting Plaintiff's testimony, including that many of Plaintiff's impairments were more severe when she was working than after her alleged disability onset date.  The ALJ's analysis of the inconsistency between Plaintiff's subjective complaints and the objective medical evidence, as well as his reasoning that many of Plaintiff's impairments were more severe when Plaintiff was working, constitute specific, clear and convincing reasons, supported by the record as a whole, for his adverse credibility determination.

The ALJ also noted that Plaintiff's "activities are somewhat inconsistent with her allegations."  AR 29.  Specifically, the ALJ stated, "although the claimant alleges vertigo, she admits that she is able to drive a car."  AR 29.  The ALJ accurately pinpointed a contradiction in Plaintiff's testimony as well as one between her testimony and her conduct.  On the one hand Plaintiff testified that she had "a real big issue" with vertigo and that "[e]ven riding in the car makes me dizzy."  AR 48.  Indeed Plaintiff testified that her vertigo and its effect on her driving was one reason why she could not work anymore.  AR 48.  On the other hand, Plaintiff testified that she had a valid driver's license, drives to the grocery store when needed, and was not restricted from driving by her doctor.  AR42, 50, 63.  The ALJ thus provided a specific, clear and convincing basis for discounting Plaintiff's credibility.  *See Johnson v. Shalala*, 60 F.3d 1428,

---

[4] The ALJ also found, when assessing the paragraph "B" criteria in evaluating Plaintiff's mental impairment, that Plaintiff had only moderate difficulties or restriction in activities of daily living, in social functioning, and in maintaining concentration, persistence, or pace.  AR 25.  The ALJ explained his reasoning for these findings in great detail, with reference to the medical evidence.  AR 25.

1434 (9th Cir. 1995); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct" in making a credibility determination).

The ALJ also noted that "[t]here is also no evidence that the claimant reported experiencing negative medication side effects as she testified." AR 29, 51. Plaintiff had testified that her vertigo medication made her queasy and nauseous before it calmed her down. Although Plaintiff brought up the queasiness and nausea in response to the ALJ's question about adverse effects from her medications, Plaintiff was not entirely clear whether it was the vertigo itself or the vertigo medication that was causing the queasiness. AR 51. The ALJ's reasoning that Plaintiff's credibility was undermined by the fact that Plaintiff had not mentioned these side effects to her treating physicians has some merit. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (in making adverse credibility determination, ALJ properly relied on "conflict between claimant's testimony that pain and medication interfered with her ability to think and the fact that claimant failed to tell her doctor of any mental limitations resulting from her condition"). However, given the lack of clarity in Plaintiff's testimony as to the cause of the nausea and queasiness, it is a close call whether Plaintiff's failure to report the nausea and queasiness medication side-effects should be a basis for discounting her credibility. The Court need not make this determination because the ALJ provided other specific, clear and convincing reasons for discounting Plaintiff's credibility, which demonstrate that he did not arbitrarily discount her credibility. *See Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir.2004) (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless); *Carmickle v. Comm'r of Social Sec. Admin*., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (the inclusion of improper reasons does not negate an overall adverse credibility determination); *Kibble v. Comm'r Soc. Sec. Admin*., 2014

WL 4290790 at *1 (9th Cir. Sept. 2, 2014).

**B. The Opinions of Drs. Griffith, Ziyar and Strong**

Plaintiff argues that the ALJ did not give legally sufficient reasons for discounting the opinions of Plaintiff treating doctors, namely Drs. Griffith and Ziyar. In assessing Plaintiff's RFC, the ALJ rejected Dr. Griffith's opinion and rejected one of two opinions provided by Dr. Ziyar. Instead, the ALJ based his RFC determination on the opinion of a state agency reviewing physician that was supported by other medical evidence in the record. The Court finds that the ALJ gave legally sufficient reasons for rejecting the opinions of Drs. Griffith and Strong and that his RFC determination is supported by substantial evidence in the record as a whole. Plaintiff also argues that the ALJ's decision is not supported by substantial evidence in light of the opinion of Dr. Bradley Strong, a "staff telepsychiatrist" at the Fresno County Department of Behavioral Health, who briefly treated Plaintiff. For the reasons discussed below, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole.

    (i)  <u>Legal Standard for Discounting a Treating Physician's Opinion in Favor of a State Agency Reviewing Physician's Opinion</u>

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific and legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a non-examining physician cannot *by itself* constitute substantial evidence to justify the rejection of the opinion of either a treating or an examining physician. *Lester*, 81

F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990).  However, the opinion of a non-examining physician may constitute substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at 1041, 1043; *Lester*, 81 F.3d at 830-831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir. 1989) (approving the ALJ's decision to reject the opinions of Magallanes' treating physicians because in so doing, the ALJ did not rely on the nonexamining physician's testimony *alone*); *Roberts v. Shalala*, 66 F.3d  179,184 (9th Cir. 1995) (affirming ALJ's rejection of examining psychologist's functional assessment which conflicted with non-examining medical advisor's testimony and with his own written report and test results).

    (ii)    Analysis

        *(a) Dr. Steven Griffith, M.D.*

Dr. Griffith rendered an opinion regarding Plaintiff's mental impairments in a short letter (dated December 14, 2010) to the state agency evaluating Plaintiff's disability claim.  AR 526.  Dr. Griffith had treated Plaintiff since August 11, 2010 and saw her on a monthly basis at House Psychiatric Clinic ("HPC").  AR 526.  Dr. Griffith wrote that Plaintiff "has been diagnosed with major depressive disorder, recurrent, moderate [296.32] and a generalized anxiety disorder [300.02]" and that "[h]er prognosis with continued treatment is guarded."  AR 526.  Dr. Griffith opined as follows:

> Ms. Preheim's symptoms include impaired concentration and increased distractability, depressed mood, mood lability, irritability, fatigue and lack of energy, insomnia, constant worry, and racing thoughts.  Due to these symptoms, she is unable to have the adequate social interaction and adaptation, concentration and persistence, and memory necessary for work at this time.

AR 526.

The ALJ considered Dr. Griffith's opinion but discounted it for purposes of formulating Plaintiff's residual functional capacity ("RFC") because "HPC Records reveal that the claimant's

mental condition does not warrant such extensive limitations." AR 28. The ALJ identified the specific findings and assessments in Plaintiff's HPC records that he relied on in reaching this conclusion. AR 28. Specifically, the ALJ noted as follows:

> [T]he claimant began receiving specialized mental health treatment in August 2010 (Exhibit 9F, pg. 2) [AR 526]. Within a few months, the claimant showed notable improvement. On November 3, 2010, the claimant presented as well dressed, well groomed, cooperative, and friendly. She showed normal speech with no signs of psychosis or delusion. She also showed intact cognition, insight, and judgment (*Id.* at pg. 6) [AR 530]. Subsequent treating notes document similar findings, showing only instances of anxiousness and depression (*Id.* at pg. 3-9) [AR 527-533]. The claimant's episodes of increased anxiousness also sometimes aligned with her noncompliance with medication. For example, on March 24, 2011, the claimant presented as very anxious and worried after she admittedly and abruptly took herself off Klonopin (Exhibit 14F, pg. 20) [AR 606]. Nevertheless, the claimant's global assessment of functioning (GAF[5]) scores have consistently ranged in the low 50s and have never dropped below 50 (Exhibit 9F, pg. 4-7 and Exhibit 14 F, pg. 34-37) [AR 528-531; 620-623].

AR 28.

The ALJ further observed that Dr. Kwon Law, the state agency consulting psychiatrist, examined the evidence and opined that Plaintiff "should be limited to simple routine tasks."[6] AR 28; 557. The ALJ found "Dr. Law's opinion consistent with the claimant's history of anxiousness, difficulty concentrating, and lack of motivation." AR 29. In his RFC assessment, the ALJ "limit[ed] the claimant to simple routine tasks in a non-public setting," based on Dr. Law's opinion. AR 29. By detailing relevant medical record evidence and finding that it was more consistent with Dr. Law's opinion than with Dr. Griffith's opinion, the ALJ provided a specific and legitimate reason, supported by substantial evidence in the record as a whole, for

---

[5] The ALJ noted in a footnote as follows:
> Although a GAF score of 41 to 50 indicates serious symptoms or serious difficulties functioning, a GAF score of 51-60 indicates moderate symptoms or moderate difficulties functioning (Diagnostic and Statistical Manual of Mental Disorders Text Revision ("DSM"), 34 (4th ed. 2000)). Therefore, a GAF score of 50 is very close to a finding of moderate symptoms or moderate difficulty functioning.

AR 28, n. 4.

[6] Plaintiff's contention that Dr. Law's opinion was limited to a "check the box" form is misplaced, as Dr. Law explained her consideration of the medical evidence and her reasoning at length. Doc. 13 at 12; AR 557; 544-546.

discounting Dr. Griffith's opinion in favor of Dr. Law's opinion.[7]  *See Buckner-Larkin v. Astrue*, 2011 WL 4361652, 628 (9th Cir. Sept. 20, 2011) (ALJ properly discounted treating physician's opinion where it was inconsistent with other medical evidence and opinions).

*(b) Dr. Latif Ziyar, M.D.*

Latif Ziyar, M.D., a psychiatrist who had been treating Plaintiff at House Psychiatric Clinic since March 10, 2011, also opined regarding Plaintiff's mental impairment. On May 27, 2011, Dr. Ziyar filled out a check-the-box Mental Impairment Questionnaire on behalf of Plaintiff. AR 633-635. The Questionnaire was addressed to the Social Security Administration. Dr. Ziyar checked off boxes, without further explanation, indicating that Plaintiff had marked limitations in performing activities within a schedule, would be unable to maintain a regular full-time job, and would miss work more than three times a month. AR 634-635. Thereafter, Dr. Ziyar submitted a second opinion directly to the state agency, upon the latter's request. AR 587-588. The second opinion is dated June 15, 2011. AR 588. The June 15, 2011 opinion notes that Dr. Ziyar had last seen the Plaintiff on May 27, 2011, when he had filled out the Mental Impairment Questionnaire discussed above. In the June 15, 2011 opinion, Dr. Ziyar states as follows: "[t]o the best of my knowledge, this patient is able to work." AR 588. Dr. Ziyar also provided his records to the state agency, along with his opinion that Plaintiff could work. AR 588.

The ALJ discounted Dr. Ziyar's initial May 27, 2011 opinion for two reasons. First, the ALJ explained that Dr. Ziyar's conclusions regarding Plaintiff's inability to work were inconsistent with HPC records for the same reasons that Dr. Griffith's opinion was inconsistent with HPC records (see above). AR 28; *see Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

---

[7] The Court notes that the ALJ's statement that Plaintiff's GAF scores "have consistently ranged in the low 50s and have never dropped below 50," is not entirely accurate. The ALJ correctly noted that Plaintiff's GAF score "never dropped below 50;" however, her GAF score was generally assessed right at 50, and only on one occasion was assessed to be 53. See AR 528-529, 620-626.

2008) (treating physician's opinion may be rejected on the basis of incongruity between the doctor's assessment and his own medical records). Next, the ALJ noted that Dr. Ziyar's "latter opinion is more consistent with the overall record," and noted that "[t]his latter opinion is also contradictory to Dr. Ziyar's May 27, 2011 opinion regarding the claimant's mental limitations. Such a contradiction renders Dr. Ziyar's initial opinion all the more suspect." AR 28. These are specific and legitimate reasons for discounting Dr. Ziyar's initial May 27, 2011 opinion, and are supported by the record. *See Magallanes v. Bowen*, 881 F.2d at 747, 753-54 (9th Cir. 1989) (an ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions); *also see Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctors' evaluations because they were check-off reports that did not contain any explanation regarding the bases of the doctors' conclusions); *Ram v. Astrue*, 2012 WL 6790197 (W.D. Wash. Nov. 30, 2012) (finding treating physician's opinion on ultimate issue of disability to be "neither probative nor significant" when it was "unsupported" and "highly conclusory"). The ALJ properly rejected Dr. Ziyar's May 27, 2011 opinion, and appropriately based his RFC determination that Plaintiff could perform simple, repetitive tasks in a non-public setting on the opinion of Dr. Kwon Law. The ALJ's RFC determination is also supported by the opinion of state agency reviewing psychologist Preston Davis as well as other medical record evidence cited by the ALJ. AR 643.

        *(c) Dr. Bradley Strong, M.D.*

After the ALJ had rendered his decision in this case, Plaintiff submitted additional evidence to the Appeals Council, i.e., an opinion from Dr. Bradley Strong, M.D., a staff "telepsychiatrist" at the Fresno County Department of Behavioral Health. AR 937. This opinion is part of the record in the matter for purposes of substantial evidence review. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163-64 (9th Cir. 2012).

13

Dr. Strong's opinion is in the form of a short letter and is dated October 12, 2012. AR 937. Dr. Strong notes that Plaintiff had been a client at the Department of Behavioral Health for the "past approx. 2 months." AR 937. Dr. Strong further states:

> It is clear based on review of Ms. Preheim's history and examination of her that she suffers from a significant mood and anxiety disorder of major severity. She has found partial benefit from her treatment regimen, though I would not expect that she will recover to the point of maintaining gainful employment for the forseeable future.

AR 937. Plaintiff argues that in light of Dr. Strong's letter, the Commissioner's decision is not supported by substantial evidence. However, Dr. Strong's letter provides no explanation for his conclusions, is not supported by treatment notes or objective findings, and does not even clarify how often and in what capacity Dr. Strong has treated the Plaintiff. Therefore, Dr. Strong's letter does not shift the balance of the evidence in the record or undercut the basis of the Commissioner's decision.[8] *See Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002) (the Commissioner "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ properly rejected treating doctor's opinion that the claimant could not work because "it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions); *Ram v. Astrue*, 2012 WL 6790197 (W.D. Wash. Nov. 30, 2012) (finding treating physician's opinion on ultimate issue of disability to be "neither probative nor significant" when it was "unsupported" and "highly conclusory").

---

[8] Plaintiff also argues that the ALJ erred in not obtaining a psychiatric consultative examination for Plaintiff. Doc. 13 at 10. However, because the medical record evidence, as a whole, was sufficient for the ALJ to properly evaluate Plaintiff's mental impairment, the ALJ was not required to obtain a psychiatric consultative examination for Plaintiff. *See* 20 C.F.R. §§ 404.1519(a)(2)(b), 416.919(a)(2)(b) ("[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim.").

**CONCLUSION**

The Court finds that the ALJ's decision is free of legal error and is supported by substantial evidence in the record as a whole.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, the Acting Commissioner of Social Security, and against Plaintiff Teri Lynne Preheim.

IT IS SO ORDERED.

Dated:   **March 26, 2015**                    /s/ Gary S. Austin
                                                                       UNITED STATES MAGISTRATE JUDGE